IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| REMEDY BEVERAGES LLC, an Oregon limited liability company, | Case No.: 3:26-cv-00970-AN |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| LONG PLAY, INC., a Colorado Corporation; JS-WR JV, Inc. dba WILLIE'S REMEDY+, a Delaware corporation, | |
| Defendants. | |

Plaintiff Remedy Beverages, LLC brings this trademark infringement action against defendants Long Play, Inc. and JS-WR JV, Inc., doing business as Willie's Remedy+. Pending before the Court is plaintiff's ex parte motion for temporary restraining order ("TRO") and order to show cause why preliminary injunction should not issue. For the reasons that follow, plaintiff's motion is DENIED.

**LEGAL STANDARD**

TROs are subject to substantially the same factors as preliminary injunctions. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Each is an "extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Generally, a party seeking a TRO or preliminary injunction must show (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the favor of the party; and (4) an injunction is in the public interest. *Id.* at 20-22. In the Ninth Circuit, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two

1

elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

Federal Rule of Civil Procedure 65 provides that a court "may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). A court may issue an ex parte TRO without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly shows that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The issuance of ex parte TROs is "extremely limited" because "'our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 438-39 (1974)). Courts have recognized that issuance of an ex parte TRO may be appropriate in limited circumstances "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing" or "because notice to the defendant would render fruitless the further prosecution of the action." *Id.* (internal quotation marks and citation omitted).

## BACKGROUND

Plaintiff Remedy Beverages LLC was founded nearly a decade ago by two friends who shared a love of herbal liquors. Decl. of Anthony McNamer ("McNamer Decl."), ECF 12, ¶ 3. In August 2017, plaintiff applied to register the trademark "REMEDY" with the U.S. Patent and Trademark Office ("PTO"). 1st Am. Compl. ("FAC"), ECF 7, ¶ 13; *see also* McNamer Decl. Ex. 5. On September 17, 2024, plaintiff's mark was federally registered, making plaintiff the owner of U.S. Trademark Registration Number 7507823 for the wordmark "REMEDY" for the goods and services category of "Liquor." McNamer Decl. Ex. 5, at 1; *see* FAC ¶ 13. As a "liquor," the REMEDY mark falls within Class 33 for "Alcoholic beverages, except beers." McNamer Decl. ¶ 7 & Ex. 5. Plaintiff alleges that it "has continuously used the REMEDY mark

2

in interstate commerce "in connection with liquor products and related marketing and promotional activities" since at least June 13, 2024.  FAC ¶ 14; *see* McNamer Decl. ¶ 9.  According to plaintiff, "[t]hrough use, advertising, promotion, and sales, the REMEDY mark has become distinctive and associated by consumers with Plaintiff."  FAC ¶ 15.  Plaintiff sells its products in 750m bottles for approximately $28.  McNemar Decl. ¶ 10.

In late 2025, plaintiff became aware that defendants "were marketing and distributing intoxicating beverages, billed as alcohol substitutes, under the name 'WILLIE's REMEDY.'"  *Id.* ¶ 4; Pl. Mot., ECF 11, at 2 (all citations to ECF pagination).  For example, one of the defendant's advertisements states: "AN ALCOHOL ALTERNATIVE THAT ACTUALLY WORKS."  McNemar Decl. Ex. 1.  Below that text, the advertisement shows a bottle labeled "WILLIE'S REMEDY+."  *Id.*  On December 3, 2025, plaintiff sent defendants a cease and desist letter.  *Id.* ¶ 5.  Defendants responded nearly two months later denying infringement.  *Id.*

In February 2026, defendants issued a press release entitled, "Willie Nelson's Willie's Remedy+ Raises $15 Million to Bring Its THC Drinks Nationwide."  *Id.* at Ex. 2.  The press release states that "Willie's Remedy+ today announced a $15 million Series A funding round led by Left Lane Capital," and that, "[i]n less than a year since launch, Willie's Remedy+ has emerged as a breakout leader in the fast-growing THC drinks category.  The brand has already sold more than 400,000 bottles, making it the #1 THC beverage sold online."  *Id.* at Ex. 2 at 1-2.  The press release goes on to say that "[f]ollowing a successful limited retail test with Total Wine, where the brand quickly ranked among top THC-infused spirits, Willie's Remedy+ is preparing for a national retail rollout in early 2026."  *Id.* at Ex. 2 at 3.  It describes "Willie's Remedy+" as "a line of THC-infused social tonics inspired by Willie Nelson's lifelong relationship with cannabis.  Crafted with natural, hemp-derived cannabinoids and designed as a modern alternative to alcohol, the brand offers a balanced, customizable way to unwind — without hangovers."  *Id.* at Ex. 2 at 4.  According to defendants' website, bottles are sold for approximately $55.  *Id.* ¶ 10.

Plaintiff alleges that defendants' use of the "term 'REMEDY' in connection with beverage products is confusingly similar to Plaintiff's REMEDY mark" and that "Defendants' products are marketed to overlapping consumers through overlapping channels of trade, including a massive online advertising campaign, and retail sales at liquor stores and specialty beverage stores." FAC ¶¶ 17-18. Plaintiffs further allege that "Defendants adopted and used the 'WILLIE'S REMEDY' designation with actual or constructive notice of Plaintiff's rights." *Id.* ¶ 20. More specifically, plaintiff's founder and attorney attests that "[t]here is no chance that Defendants' trademark attorney did not know of Plaintiff's mark prior to Defendants' adoption of its infringing mark" because even "if Defendants only searched for 'Willie's Remedy'" on the PTO website, they "would still find Plaintiff's mark in the Top 100 hits (at No. 80) and [that] it is the <u>only</u> mark in Class 33." McNamer Decl. ¶ 7 (emphasis in original); *see id.* at Ex. 4.

On May 15, 2026, plaintiff initiated this action. *See* Compl., ECF 1. On May 19, plaintiff filed an amended complaint, bringing claims for federal trademark infringement under 15 U.S.C. § 1114, Oregon trademark infringement under Oregon Revised Statutes ("ORS") § 647.095 *et seq.*, and false designation of origin and unfair competition under 15 U.S.C. § 1125(a). FAC 4-5. On May 20, plaintiff filed the now-pending ex parte motion for TRO and order to show cause why preliminary injunction should not issue. Pl. Mot. Plaintiff's counsel states that he informed defendants' counsel of plaintiff's intent to seek a TRO on May 16 and then followed up on May 18, and that he will send defendants' counsel a copy of the TRO. McNamer Decl. ¶ 8. Defendants have not responded or otherwise appeared.

## DISCUSSION

Plaintiff has not clearly shown that it is entitled to injunctive relief. The Court begins its analysis with "the most important" of the *Winter* factors, the likelihood of success on the merits. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and quotation marks omitted). As plaintiff apparently concedes, the merits analysis rises and falls on the strength of plaintiff's federal trademark infringement claim. *See* Pl. Mot. 6.

To prevail on a federal trademark infringement claim, plaintiff must show that "(1) it has a protected ownership interest in the [REMEDY] mark, and (2) [defendants'] use of the word [REMEDY] is

4

likely to cause consumer confusion." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014)  Although plaintiff's evidence is light, it is sufficient at this stage to show ownership.  Federal "[r]egistration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Id.* (citing 15 U.S.C. § 1115(a)).  REMEDY is federally registered.  McNamer Decl. Ex. 5. And because REMEDY is a standard character mark, plaintiff's exclusive right to use REMEDY within its identified class of goods "is extremely broad, covering the word in all types of depictions." *Pom Wonderful*, 775 F.3d at 1125.  At this stage, that is enough.  The first prong is met.

However, plaintiff's arguments fall short on the second prong.  Courts in the Ninth Circuit look to the eight *Sleekcraft* factors to determine whether a defendant's use of a mark is likely to cause consumer confusion.  *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n. 19 (9th Cir. 2003)).  Those factors are:

> (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines.

*JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citing *Sleekcraft*, 599 F.2d at 348-49).  Courts should apply these factors "flexibly" and not as a mechanically enforced checklist.  *Id.* Taken together, the factors do not show a sufficient likelihood of confusion here.

***Strength of Plaintiff's Mark.***  Plaintiff has sufficiently shown the strength of its mark.  While the strength of a mark is usually evaluated in terms of its conceptual and commercial strength, *id.*, evidence of commercial strength is not needed at the TRO or preliminary injunction stage, *see Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011).  "To determine a mark's conceptual strength, [courts in the Ninth Circuit] classify a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic." *JL Beverage*, 828 F.3d at 1107.  REMEDY may be deemed a suggestive mark because it "suggest[s] a product's features and

5

require[s] consumers to exercise some imagination to associate the suggestive mark with the product." *Id.* Moreover, the PTO "issued [the] registration without requiring proof of secondary meaning," thus providing "*prima facie* evidence that the . . . mark is inherently distinctive (*i.e.*, at least suggestive)." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1162 (9th Cir. 2021); *see Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010).  This factor weighs in plaintiff's favor.

*Proximity or Relatedness of the Goods.*  On the other hand, the relatedness of the goods weighs against plaintiff.  "Goods and services are related when they are complementary, sold to the same class of purchasers, or similar in use and function."  *Ironhawk*, 2 F.4th at 1163.  Products need not be in direct competition; products "which would be reasonably thought by the buying public to come from the same source if sold under the same mark" are sufficiently related.  *Id.* (citation and quotation marks omitted). Plaintiff argues the goods here are related because both are "intoxicating beverages[] and Defendants advertise their product as an alcohol alternative."  Pl. Mot. 10.  But the record shows that the products are quite dissimilar.  Plaintiff alleges that it uses "the REMEDY mark in commerce in connection with liquor products and related marketing and promotional activities," while defendants' WILLIE'S REMEDY "is a CBD-containing intoxicating beverage marketed as a substitute for liquor."  FAC ¶¶ 15-16.  The limited evidence plaintiff presents emphasizes WILLIE'S REMEDY's functions as an alcohol alternative—and thus, explicitly *not* a liquor product. *See* McNamer Decl. Exs. 1-2.  At most, plaintiff alleges that WILLIE'S REMEDY "is sold in a standard liquor bottle," FAC ¶ 16, but so are fancy juices and oils, among many other products.  Looking to plaintiffs' cited PTO actions helps illuminate the gap between the products here.  For example, plaintiffs cite PTO actions comparing "closely related skin-care products," champagne and sparkling wine, MRI diagnostic apparatuses and medical ultrasound devices, and clothing and footwear. Pl. Mot. 8-9.  None of these actions show that a product marketed as a direct alternative is in fact related to the thing it disclaims to be.

*Similarity of the Marks.*  The similarity of the marks also weighs against plaintiff.  Three principles guide the similarity analysis: "First, similarity is best adjudged by appearance, sound, and meaning. Second, the marks must be considered in their entirety and as they appear in the marketplace.  Third,

similarities are weighed more heavily than differences." *JL Beverage*, 828 F.3d at 1109 (citation and quotation marks omitted). Here, both marks contain the word "remedy," but that is where the similarities end. In every use of WILLIE'S REMEDY that plaintiff has shown, the word "remedy" is immediately followed by a "+." *See* McNemar Decl. Exs. 1-3. And while plaintiff cites actions that have found possessive terms to be similar, the word "remedy" on its own carries quite a different meaning when it is made more specific. For example, "remedy" is quite different than "nature's remedy," "motion sickness remedy," "Dr. John's remedy," or "the Court's remedy." Moreover, WILLIE—meaning famed country singer Willie Nelson—dominates the WILLIE'S REMEDY mark. *Cf. In re Chica, Inc.*, 84 USPQ2d 1845, 1848-49, at *4 (TTAB 2007) (noting that the marks at issue were "both dominated by the word 'Corazon'"). Even weighing the similarities more heavily than the differences, this factor does not clearly come out in plaintiff's favor. At most, it is neutral.

*Evidence of Actual Confusion.* As plaintiff readily concedes, there is presently no evidence of actual confusion. *See* Pl. Mot. 10. This factor thus weighs against plaintiff, albeit with less importance given the stage of the litigation. *See Network Automation*, 638 F.3d at 1151 ("actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act" (citation and quotation marks omitted)).

*Marketing Channels Used.* Nor is there evidence of convergent marketing channels. Plaintiff states in its motion that "[b]oth products are sold in liquor stores," Pl. Mot. 10, but offers no evidence showing where or how REMEDY is sold at all. And the evidence plaintiff has presented shows that WILLIE'S REMEDY advertises explicitly as "AN ALCOHOL ALTERNATIVE"—and thus clearly *not* as a liquor product. McNamer Decl. Ex. 1. This factor weighs against plaintiff accordingly.

*Degree of Consumer Care.* On customer care, plaintiff asserts that both products are "relatively inexpensive." Pl. Mot. 10; *see* McNamer Decl. ¶ 10. But that ignores the nature of the products at issue. WILLIE'S REMEDY is a CBD-containing beverage marketed as an alcohol alternative. Any "reasonably prudent consumer" is unlikely to be confused about whether an "alcohol alternative" is an alcoholic liquor. *Network Automation*, 638 F3d at 1152 (first quote). Moreover, consumers searching for specific liquors

7

are likely to exercise some care to make sure that their liquor actually contains liquor or, conversely, that their alcohol alternative does not.  This factor weighs against plaintiff.

*Defendants' Intent.*  All of plaintiff's evidence regarding defendants' intent is speculative and conclusory.  *See* McNemar Decl. ¶ 7.  Although this factor "is not required for a finding of likelihood of confusion," *Pom Wonderful*, 775 F.3d at 1131, it certainly does not weigh in plaintiff's favor.

*Likelihood of Product Expansion.*  Finally, plaintiff has shown no likelihood of product expansion.  Plaintiff argues that "[t]his factor is not applicable because Defendants are already selling a competitive product."  Pl. Mot. 10.  But defendants' product is only competitive insofar as it is marketed as an alternative to alcohol consumption altogether.  From what plaintiff has presented, there appears to be almost no chance that defendants will begin selling a liquor product or that plaintiff will begin to sell a non-alcoholic REMEDY beverage.  This factor thus weighs against plaintiff.

Altogether, plaintiff has not shown a sufficient likelihood of success on the merits.  But even if plaintiff had shown such likelihood, its motion would still be denied for lack of irreparable harm.  Plaintiff argues that it will suffer irreparable harm because WILLIE'S REMEDY will overpower REMEDY if defendants are "allowed to implement their national expansion strategy."  Pl. Mot. 11.  But a TRO is only appropriate where "injury is *likely*, not just possible."  *All. for the Wild Rockies*, 632 F.3d at 1131 (emphasis in original).  All that plaintiff offers in support of its argument here is a vague press release—plaintiff does not present evidence showing that WILLIE'S REMEDY's expansion is imminent or certain.  Plaintiffs do not offer any actual "evidence of loss of control over business reputation [or] damage to goodwill." *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (cleaned up).  And, for the reasons described above, it is unclear that WILLIE'S REMEDY will cause any confusion with the REMEDY brand at all.  *See Comet ML Inc. v. Perplexity AI, Inc.*, No. 4:25-CV-04088-YGR, 2025 WL 1822477, at \*12 (N.D. Cal. June 30, 2025) ("In the context of a preliminary injunction for trademark infringement, the irreparable harm showing closely tracks the merits analysis." (citing *Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999)).  Plaintiff's evidence is simply too "cursory and

conclusory" to show irreparable harm is likely in the absence of an injunction. *Herb Reed Enters. v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

Furthermore, it is unclear why plaintiff is only just now bringing this motion. "A plaintiff's delay in seeking relief weighs against granting a TRO or preliminary injunction." *Perez v. City of Petaluma*, No. 21-cv-06190-JST, 2021 WL 3934327, at *1 (N.D. Cal. Aug. 13, 2021) (collecting cases). Plaintiff states that it became aware of WILLIE'S REMEDY in late 2025. Pl. Mot. 2. The cited press release is from February 5, 2026. McNemar Decl. Ex. 2. Plaintiff sent defendants a cease and desist letter on December 3, 2025, and received a response approximately two months later. *Id.* ¶ 5. However, plaintiff did not file this motion until May 20—three months after the press release was issued and plaintiff received defendants' response. Plaintiff's "unexplained delay in seeking relief undermines their claim that they will suffer irreparable harm in the absence of a TRO." *Robinhood Mkts., Inc. v. Zhu*, No. 26-cv-02469-JST, 2026 WL 915291, at *4 (N.D. Cal. Apr. 3, 2026) (citing *Devasahayam v. DMB Cap. Grp.*, No. 3:17-cv-02095-BEN-WVG, 2017 WL 6547897, at *4 (S.D. Cal. Dec. 20, 2017)).

Because plaintiff has not shown a likelihood of success on the merits and the threat of irreparable harm is too speculative to warrant injunctive relief, the Court does not reach the remaining *Winter* factors. *See Azar*, 911 F.3d at 575 ("Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, [the court] need not consider the other factors." (citation and quotation marks omitted)); *see also Robinhood Markets, Inc.*, 2026 WL 915291, at *4 ("In the absence of a showing of irreparable harm, the Court need not examine the remaining *Winter* factors."). Plaintiff's motion is denied.

//

//

//

//

//

//

9

## CONCLUSION

For the reasons described herein, plaintiff's motion for temporary restraining order and order to show cause why preliminary injunction should not issue, ECF 11, is DENIED.

IT IS SO ORDERED.

DATED this 22nd day of May, 2026.

Adrienne Nelson
United States District Judge